# Exhibit A

FILED: NEW YORK COUNTY CLERK 12/13/2016 02:33 PM
NYSCEF DOC. NO. 1

INDEX NO. 160465/2016
RECEIVED NYSCEF: 12/13/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____          Index No.

Barbara A. Res
     Plaintiff

     v.
                                             SUMMONS and
                                             VERIFIED COMPLAINT

David Martosko and Mail Media, Inc.,
     Defendants

_____

To the above named Defendants:

YOU ARE HEREBY SUMMONED and are required to serve upon Plaintiff a verified answer to
the verified complaint in this action within twenty days after the service of this summons,
exclusive of the date of service, or within thirty days after service is complete if this summons is
not personally delivered to you within the State of New York. In case of your failure to answer,
judgment will be taken against you by default for the relief demanded within the complaint.

Dated: *12/13/2016*

                                             Barbara A Res, Plaintiff *Pro se*
                                             91 Ogle Road
                                             Old Tappan, NJ 07675
                                             201-768-4184

Trial is desired in the County of New York
Basis of jurisdiction for Defendants is that they conduct business in the State of New York,
County of New York.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| _____ | Index No. |
| Barbara A. Res | |
|     Plaintiff | |
| | |
| v. | VERIFIED COMPLAINT |
| | and JURY DEMAND |
| | |
| David Martosko and Mail Media, Inc. | |
|     Defendants | |
| _____ | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This action is for declaratory, injunctive and equitable relief, as well as for monetary

damages to address acts of defamation and libel committed by Defendants against the Plaintiff,

myself.

Defendants' unlawful conduct was malicious, willful and wanton and/or showed a

reckless disregard for my rights which has caused and continues to cause me disgrace,

humiliation and shame throughout the world, permanent harm to my personal and professional

reputations, and severe mental anguish and emotional distress.

## PRELIMINARY STATEMENT

Defendants published an article about Plaintiff which was knowingly false and

misleading with the intention of bolstering the reputation of Donald Trump, with whom

Defendants were attempting to curry favor.  Defendants knew that the information it was

publishing was false and misleading and knew or should have know that publication of such

information would cause Plaintiff great  harm to her reputation as well as emotional distress.

Defendants intentionally published this information without even providing Plaintiff with an opportunity to dispute it or defend herself against lies, which Defendants knew to be lies, and which it published anyway.

## JURISDICTION

This court has jurisdiction over Mail Media Inc. because it is a resident of New York State. This court has jurisdiction over David Martosko because he is an employee of Mail Media, Inc. and writes articles which are published on the internet for viewing in New York and the United States and internationally. Barbara A. Res's work and professional community is in the state of New York.

## PARTIES

1. Barbara A. Res is a resident of New Jersey who does business in the state of New York. Barbara A. Res is a New York state licensed professional engineer, an Attorney licensed in the states of New York and New Jersey and an arbitrator and mediator on the Construction Panel of the American Arbitration Arbitration. Barbara Res has worked in the Construction and Real Estate Industry for 40 years and is a well respected member of the community.

2. Mail Media, Inc. is a business incorporated in New York state. It operates a website known as Dailymail.com which is an international business with a viewership of an estimated 2 million daily.

3. David Martosko is a reporter with the Daily Mail. According to newspaper reports, he is very close with Donald Trump and has been rumored to have been under consideration for the position of Press Secretary in the Trump administration.

## FACTS

1. Barbara A. Res was employed on three separate occasions by Donald Trump. First in 1980, when she was hired to be the Vice President in charge of construction of Trump Tower. After she left voluntarily in 1984, she was rehired in 1987 to be Executive Vice President in charge of development. She left voluntarily in 1991 and was asked by Donald Trump to remain as a consultant to his company Trump Wilshire Associates which owned property in California. Res remained as a consultant until approximately 1998, when she voluntarily ended the consultancy. At no time did Trump ever "get rid of her", fire her or ask her to leave. On the contrary, each time she left his employ, he asked her not to leave, and they remained on good terms.

2. Barbara Res remained in very sparse contact with Donald Trump however he wrote her letters of recommendation for her application to law school and for the NY state Bar.

3. In May, 2012, Barbara Res called Donald Trump and spoke to his assistant, Rhona Graff, with whom Res had been friends for about 20 years. Graff advised Res that Trump could not take the call but suggested Res send an email to her for transmittal to Trump. Res indicated that she wished to meet with Trump for a few minutes to seek his advice. Graff dissuaded Res on the possibility of a meeting but indicated that Trump might be willing to talk to her on the phone.

4. On 5/21/12, Res sent an email to Trump, via Graff, which included this request: "If you have a position on a large project, or several projects, I would be willing to commute/relocate. Thank you for any consideration or suggestions you can offer."

5. On 6/12/12 Graff responded as follows: "I gave Donald your e mail and he asked me to respond back on his behalf. He was pleased to hear from you! However, as much as he would like to consider you for a position, there is nothing suitable for you at the present

time. He will certainly keep you in mind should something develop down the road!" It was clear that Trump had no intention of speaking with Res and she never again attempted to call him or seek any further employment opportunities.

6. During the subsequent months, Barbara Res started writing a book about her experiences as a woman in construction. She approached Rhona Graff with the idea that Trump help her in publishing it. Res was very fair with Trump in the book and did not include many negative things about him as the book was to tell her story, not his. Res even offered Trump a right to edit the book if he would get involved in its promotion. Graff never responded to Res on the request.

7. In July 2013, after the book was self-published, Res sent a copy of the it to Trump for his review. Because the book was so positive about Trump, Res thought he might be interested in promoting it. It is doubtful that he himself read the book, but an underling may have read it and reported back to him.

8. In September 2013, Res ran into Trump at a funeral. He laced into her about the book and was very nasty to her. She subsequently wrote him a letter via Graff indicating her surprise at his reaction, given that she was so even and fair. She never received a response. Years later, Trump would admit publicly that the book was good for him.

9. Months later, Res sent copies of articles she was interviewed for to Graff as she did with dozens of friends and acquaintances. She did not ask nor did she expect Graff to show them to Trump. Graff responded that she liked the articles.

10. At no time after she voluntarily left the Trump Organization in 1998, did Res ever speak with Trump on the phone.

11. Res spoke with Graff on the telephone twice during the period from 1998 to 2016.

12. On only one occasion did Res ask Trump for a job and that was in 2012. At that time she sent letters to all of her former bosses and spoke to all of them, except Trump who did not have time. She never sent any other letters or emails to Trump asking for work.

13. In June, 2015, Donald Trump announced that he was running for president. At a point in time after that announcement, Trump began to publicly state that proof of the fact that he will be "great for women" was his having hired Res to be in charge of construction of Trump Tower. He did not say her name but said she was "fantastic".

14. Because she had written a book and because she had received a lot of publicity about being in charge of construction of Trump Tower, and for her other work in the Trump Organization, Res was easy to find. Several reporters located her and called her and she responded honestly to their questions.

15. After a New York Times article that appeared on 5/14/2016, in which Res was quoted, Trump went on a Twitter tirade against Res. Because of the backlash, she decided she would not give interviews until things settled.

16. On May 21, Res received this misleading email from reporter David Martosko as follows: " I'm doing some interviews with women who have worked with Donald Trump over the years, as a sort of follow-on to the New York Times' work. Hoping you might have time to speak with me this weekend sometime on the phone. Would that be possible? I managed to find a copy of your book and just finished it yesterday. Thanks for writing it."

17. Taking Martosko on his word that he was also talking to other people and could easily write his article without her, and because she was concerned about Trump's and his

supporters reaction to the Times article, Res responded that she was not taking interviews at the time.

18. On May 24, Dailymail.com published an article online, over Martosko's byline, which read, *"The Least Sexist Boss I Ever Had": What Trump critic Barbara Res REALLY thought before she turned on THE Donald – after he "got rid of her" and refused to hire her back.* The article was a smear on Barbara Res, not an interview with the women in the NY Times article as Martosko has stated. The article's headline intentionally misquoted her book and stated she had been "gotten rid of", when it had reason to know that such was not the case, since Martosko claimed to have read her book, which clearly lays out each time Res left her employ and the reason for her departure. The article further went on to portray Res as a vindictive disgruntled employee who was out to get back at Trump for refusing to rehire her. Nothing could be further from the truth. Res remained friendly towards Trump even after he publicly embarrassed her by castigating her book in front of business acquaintances.

19. As a result of the Martosko's Dailymail.com article, Res was lampooned in other articles and on Facebook and Youtube. Res was labeled a fraud. Scores of millions of people had access to the lies and misinformation Martosko and DeilyMail.com published. Res was targeted, harassed and threatened on Twitter and the telephone by Trump supporters who believed the lies that Martosko and the Dailymail.com perpetuated.

20. Res has suffered extreme humiliation, interference with her business prospects and significant emotional harm as a result of the Dailymail.com's libelous conduct.

DEFAMATION AND LIBEL *PER SE*

1. On May 24, 2016 DailyMail.com published an article that stated in its headline that Res called Trump "the least sexist boss she ever had", and that she was fired from her position in the Trump Organization. This statement and the totality of the statements in the article, their intended implications and the inferences that may be drawn therefrom constitute libel *per se*.

2. David Martosko and DailyMail.com knew when he wrote his article that his statements were untrue because, by his own admission, he had read Res's book.

3. David Martosko and DailyMail.com made no effort to advise Res that he was writing an article solely about her with an intent to damage her reputation when he contacted her.

4. David Martosko and DailyMail.com made no effort to get Res's comments on the emails she sent to Rhona Graff.

5. David Martosko and DailyMail.com admitted he saw the emails yet he wrote that Res "made repeated requests" for a job when he knew, in fact, that she had only once in 2012, asked Trump if he had a project she might work on.

6. Martosko further stated, without knowledge, that this fact made Res angry with Trump, although the communications subsequent to Trump's indication that there were no positions in 2012 show that Res was not angry with Trump, on the contrary, she praised him in articles published in 2013 and 2014 for giving her a great opportunity and treated him very fairly and kindly in her 2013 book, which Martosko read.

7. David Martosko and DailyMail.com knew that Res's quote about Trump being the "least sexist boss" had only to do with his trusting of her and treating her equally with the men, and not in his dealings with other women, and that it was not in conflict with other statements she had made, such as the ones in the New York .

8. David Martosko and DailyMail.com knew when Martosko said, "But it was Trump, she wrote, who treated her the same way he treated the men in his company – the polar opposite of the narrative she fueled in the New York Times story" that this statement was a lie and that Res said in the Times story that Trump gave her the job at Trump Tower to act in his stead.   Martosko's and DailyMail's purpose was to paint Res as a liar.

9. David Martosko having read Res's book, and DailyMail.com knew that she worked for Trump on three separate occasions and had left voluntarily, but quoted Trump, knowing it was a lie, as saying he "got rid of her".

10. Having read Res' book, Martosko and DailyMail.com knew that Res had a storied career in the business but instead quoted, knowing it was a lie, Trump as saying, "[Res] didn't last long in the business".

11. David Martosko and DailyMail.com intentionally twisted and misconstrued the facts and lied outright in an effort to bolster Donald Trump, with whom , it is upon information and belief, they were trying to curry favor at Res's and the truth's expense.

12. David Martosko and DailyMail.com intentionally did not seek any comment from Res after they knew he was writing a smear piece on her alone so that his and Trump's lies would appear unchallenged.

13. David Martosko and DailyMail.com gratuitously included information describing Res's demeanor in an attempt to make her appear unpleasant and rude to their readers.

14. Upon information and belief, the purpose of this article was to sell advertising with sensational reports that were untrue and which Martosko and DailyMail.com knew were untrue, to aid and abet Trump's spreading lies and misinformation about Res and to destroy her reputation.

15. Based upon's Res's knowledge of Trump and the way he conducts himself, Res believes Trump asked Martosko and DailyMail.com to destroy Res, a request they accommodated.

16. By their conduct and their actions, David Martosko and DailyMail.com intended to and did cause or recklessly caused damage to the professional reputation of Barbara Res, and caused her great emotional harm.

17. As a direct result, Barbara Res's professional reputation and her ability to get work has suffered for which she is entitled to monetary damages.

18. As a direct result, Barbara Res has suffered severe emotional harm for which she is entitled to damages.

19. David Martosko and DailyMail.com's extreme and outrageous conduct was knowing, malicious, willful and wonton, entitling Res to an award of punitive damages.

## PRAYER FOR RELIEF

Plaintiff Barbara A. Res, prays that the Court enter Judgment in her favor

1. A Declaratory Judgment that Defendant's actions was willful and wonton, and intentionally or recklessly caused her to suffer damage to her professional reputation and severe emotional distress.

2. An injunction requiring DailyMail.com to remove the article in its entirety from its website.

3. An award of damages in an amount to be determined at trial plus prejudgment interest to compensate Plaintiff for damage to reputation and inability to acquire employment.

4. An award of damages in an amount to be determined at trial plus prejudgment interest to compensate Plaintiff for mental anguish.

5. An award of damages in an amount to be determined at trial plus prejudgment interest to compensate Plaintiff for all monetary and non-monetary losses

6. An award of punitive damages in an amount to be determined at trial plus prejudgment interest.

7. Such other and further relief as the Court may deem appropriate.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of facts and damages as stated herein.

Dated:   12/13/2016

By: Barbara A. Res, Pro se Plaintiff

## VERIFICATION

State of New Jersey)

            ) ss.:

County of Bergen)

      Barbara A. Res being duly sworn deposes and says that deponent is the Plaintiff in the within action: that deponent has read the foregoing complaint and knows the contents thereof: that the same is true to deponent's own knowledge except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true. As to those matters alleged on information and belief, the source of deponent's information and the grounds of deponent's belief are investigate materials and records contained in deponent's file.

Sworn to before me on this 13th day of December, 2016

Notary Public, State of New Jersey

**Karen Ann Olsen**
**Notary Public of New Jersey**
**My Commission Expires 2/28/21**